**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NORMA CUMMINGS RETTEK,**

            **Plaintiff,**       **1:08-CV-844**
                                                              **(GLS/DRH)**
            **v.**

**ELLIS HOSPITAL; LINDA BREAULT**
**MARK BRESLIN; CHRISTINE CIOFFI;**
**JAMES CONNOLLY; GARY**
**EBELTOFT; HOWARD S. FOOTE; D.**
**JOSEPH GERSUK; MARSHALL G.**
**JONES; PATRICK KEHOE; ROBERT J.**
**KENNEDY; ROBERT LIEBERS;**
**JUDITH B. MCILDUFF; DEBORAH**
**MULLANEY; ROBERT F. MURRAY;**
**SARAH SCHERMERHORN; PAUL**
**SCUDDER; RICHARD TOLL;** and
**VINCENT J. ZECCOLA,** as Trustees
of Ellis Hospital; **DOMINICK BIZZARRO;**
**ROBERT A. BREAULT, GREGG W.**
**BROWN; THOMAS D'ANDREA;**
**HARRY DEPAN; THOMAS DONOVAN;**
**JOHN FLYNN; FRANK HARTE; DALE**
**HEDMAN; JOHN JASKI; NORA JASKI;**
**BONNIE MCGUIRE JONES; WILLIAM**
**J. KENNEALLY; BARBARA C.**
**LAWRENCE; SUE LEHRMAN; MARK**
**M. LITTLE; RICHARD LIPMAN; HUGH**
**J. MURPHY; JOAN R. PIPITO;**
**ZYGMOND SLEZAK; SUZANNE**
**SMITH; JOHN VAN DELOO; KIRBY**
**VOSBURGH; CHARLES WILLIAMSEN;**
and **GARY WOOD,** as former Trustees of
Ellis Hospital; **JAMES W. CONNOLLY,**

*as President and Chief Executive Officer
of Ellis Hospital*; **ANDREW M. CUOMO,**
*as Attorney General of the State of New
York; and* **JOHN DOES 1-30,**

                **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Skadden, Arps Law Firm<br>Four Times Square<br>New York, NY 10036-6522 | DANIEL L. KURTZ, ESQ. |
| Holland, Knight Law Firm<br>195 Broadway<br>New York, NY 10007 | SEAN C. SHEELY, ESQ.<br>AMY B. KLETNICK, ESQ.<br>DAVID J. HARRINGTON, ESQ. |
| Harvey, Mumford Law Firm<br>7 Southwoods Boulevard<br>Third Flood<br>Albany, NY 12207 | JONATHAN P. HARVEY, ESQ. |
| **FOR DEFENDANTS:** | |
| Hon. Andrew Cuomo<br>New York State Attorney General<br>The Capitol<br>Albany, NY 12224 | DONALD P. SEGAL<br>Assistant Attorney General |
| 120 Broadway<br>New York, NY 10271 | CAROLYN T. ELLIS<br>Assistant Attorney General |
| Nixon, Peabody Law Firm<br>677 Broadway<br>10th Floor | DANIEL J. HURTEAU, ESQ. |

2

Albany, NY 12207

**Gary L. Sharpe
U.S. District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Norma Rettek ("Rettek") brings this action seeking, *inter alia*, to enforce the terms of charitable bequests made to Ellis Hospital ("Ellis" or the "Hospital") through the wills of her uncle and aunt, John and Anna Belanger. (See Dkt. No. 1.) Pending are motions to dismiss by all defendants pursuant to FED. R. CIV. P. 12(b)(6). (See Dkt. Nos. 5,6.) For the reasons that follow, the motions to dismiss are granted, and Rettek's action is dismissed in its entirety.

## II. Facts and Procedural History[1]

John and Anna Belanger died in 1968 and 1969, respectively. (See Compl. at ¶¶ 13, 14; Dkt. No. 1.) Neither was survived by issue. *Id.* at ¶ 18. Through their wills, the Belangers' left 75% of their residuary estates to Ellis, a non-profit New York corporation, in the form of use restricted gifts (the "Belanger Legacy"). *Id.* at ¶¶ 13,14. Specifically, Article FIFTH of Mr.

---

[1]The facts are derived from Rettek's complaint, and are taken as true for purposes of the current motions.

3

Belanger's will provided for the disposition of his residuary estate as follows:

> (1) Seventy-five per centum (75%) thereof to the Ellis Hospital of Schenectady, New York, to be used in improving the facilities of the present Nurses Training School. In the event that circumstances prevent or dictate the termination of such training school, it is my wish that this deviseee [sic] be used for such major project such as facilities for an extended care unit or nursing home accommodations which will provide adequate minimal medical attention and care.

*Id.* at ¶ 13. Article TENTH of Mrs. Belanger's will contained a residuary clause which was, for all intents and purposes, identical to Article FIFTH of Mr. Belanger's will. *Id.* at ¶ 14. In total, the Belanger Legacy totaled over $2.3 million. *Id.* at ¶ 15. These bequests were motivated by John Belanger's wish to honor his deceased sister, Lurline Cummings, who had been a nurse.

Plaintiff Rettek is the daughter of Lurline Cummings and the niece of the Belangers. From 2003 to 2005, Rettek sat on the Board of Trustees for the Ellis Hospital Foundation in recognition of gifts she had given to the Hospital and the Belangers' generosity. *Id.* at ¶¶ 4, 34, 47. In response to inquiries in the mid-1990's, Rettek discovered there was no "tangible evidence" that Ellis had spent any of the Belanger Legacy to improve the

4

facilities of the Nursing School, as required by the Belangers' wills. *Id.* at ¶ 31. Rather, the two buildings which housed the School of Nursing on the Hospital campus were demolished in 1974, and the School was repeatedly relocated to a series of different rented facilities. *Id.* at ¶¶ 21-26. Additionally, disclosures by the Hospital revealed that it had "borrowed" the Belanger Legacy for "projects required by the Hospital and its patients" including its general building program, but not the Nursing School. *Id.* at ¶¶ 27-29, 40-42. In 2004, Ellis disclosed that it finally intended to use a modest portion of the Belanger Legacy to equip a new facility for the School of Nursing. *Id.* at ¶¶ 24, 36. However, Ellis also planned to charge the School rent from the Belanger Legacy for use of the new facility, thus enabling the Hospital to continue using the Belanger Legacy for general purposes. *Id.* at ¶¶ 37, 46. Ellis compounded these improprieties by failing to ensure that the Belanger Legacy was properly invested. *Id.* at ¶ 30.

Despite Rettek's repeated disclosure demands, Ellis refused to provide more than minimal information regarding its use of the Belanger Legacy. *Id.* at ¶¶ 38, 39, 43, 44. Accordingly, in March of 2005 Rettek, through counsel, notified the Charities Bureau of the New York Attorney General's Office of the alleged misappropriation by Ellis. *Id.* at ¶ 48. From

2005 to 2007, Rettek's counsel communicated and met with the Charities Bureau repeatedly in an effort to fashion an appropriate remedy. *Id.* During this period the Bureau also contacted and visited Ellis in an effort to investigate the accuracy of Rettek's allegations. *Id.* at ¶ 49. Apparently dissatisfied with the lack of progress, Rettek's counsel advised the Charities Bureau in June of 2008 that Rettek intended to commence a judicial action against the Hospital unless a satisfactory resolution of the matter was achieved. *Id.*

With no such resolution forthcoming, Rettek filed this diversity action in August of 2008, asserting state claims for breach of trust; breach of fiduciary duty under the common law and § 717 of the Not-for-Profit Corporation Law ("N-PCL"); imprudent investment under N-PCL §§ 512 and 717; modifying the terms of a gift without judicial permission or donor consent in violation of N-PCL § 522; and seeking, *inter alia*, the imposition of a constructive trust, an accounting, and a declaratory judgment. *Id.* at ¶¶ 50-81. In essence, Rettek seeks to enforce the restrictions on the charitable gifts given to Ellis through the Belangers' wills.

### III. Standard of Review

The standard of review under FED. R. CIV. P. 12(b)(6) is well

6

established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Dixon v. Albany County Bd. of Elections*, No. 1:08-CV-502, 2008 WL 4238708, at *2 (N.D.N.Y. Sept. 8, 2008).

## IV. Discussion

The defendants seek to dismiss this action on grounds that Rettek lacks standing to enforce the terms of the Belangers' charitable bequests to Ellis. The current and former board members and officers of Ellis named as defendants herein also move to dismiss because they are protected by the business judgment rule, and because all common law claims asserted in the complaint are preempted by the N-PCL. Finding the issue of Rettek's standing to be dispositive, the court declines to address the remaining arguments.

### A. Standing under New York's Common Law

New York's Estates Powers and Trusts Law empowers the State Attorney General to enforce the terms of charitable bequests. Specifically, EPTL § 8-1.1(f) provides:

> The attorney general shall represent the beneficiaries of such dispositions for religious, charitable, educational or benevolent purposes and it shall be his duty to enforce the rights of such

7

beneficiaries by appropriate proceedings in the courts. N.Y. E<small>ST</small>. P<small>OWERS</small> & T<small>RUSTS</small> L<small>AW</small> § 8-1.1(f) (McKinney 2002). This provision codifies New York's long standing rule that "[n]ormally standing to challenge actions by the trustees of a charitable trust or corporation is limited to the Attorney-General." *Alco Gravure, Inc. v. the Knapp Foundation*, 64 N.Y.2d 458, 466 (1985). The purpose of this rule is to "prevent vexatious litigation and suits by irresponsible parties who do not have a tangible stake in the matter and have not conducted appropriate investigations." *Id.*

Narrow exceptions to the Attorney General's usually exclusive standing have been recognized by New York's courts. Where, for instance, a plaintiff is part of a "class of potential beneficiaries [that] is sharply defined and limited in number" standing exists, despite the general rule barring enforcement actions by beneficiaries of charitable bequests. *Id.* at 465. Further, courts have allowed donors of charitable gifts, or successors to their rights and interests, to enforce the terms of a bequest under limited circumstances. *See, e.g., Assoc. Alumni of Gen. Theological Seminary v. Gen. Theological Seminary*, 163 N.Y. 417, 422 (1900) (finding corporation which succeeded donor alumni association had standing to enforce terms

8

of a charitable trust in which donor retained oversight rights).

In the present instance, Rettek is not the donor of the Belanger Legacy or a beneficiary thereunder. Nor is there any indication that she has succeeded to the rights and interests of her aunt and uncle as in *Associate Alumni*. Nevertheless, Rettek contends that she has standing to bring this action pursuant to the First Department case of *Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*, 281 A.D.2d 127 (1st Dep't 2001), under which a donor's widow was granted standing to enforce the terms of the donor's charitable bequest to a hospital.

On its face, *Smithers* appears quite similar to the current case. A donor, while living, agreed to give a hospital $10 million in exchange for the hospital's promise to use the funds for an alcoholic treatment center. *Id.* at 128-30  Upon the donor's death it was revealed that the hospital had misappropriated the funds, and the donor's widow brought suit to enforce the terms of her husband's gift. *Id.* at 131-32. Unlike the present case, however, the plaintiff widow in *Smithers* was also the administratrix of the donor's estate. *Id.* at 132. Contrary to Rettek's contention, the First Department clearly found this factor dispositive to the question of the plaintiff's standing, stating:

9

> Mrs. Smithers did not bring this action on her own behalf or on behalf of beneficiaries of the [Treatment] Center. She brought it as the court-appointed special administratrix of the estate of her late husband to enforce his rights under his agreement with the Hospital through specific performance of that agreement.... To hold that, in her capacity as her late husband's representative, Mrs. Smithers has no standing to institute an action to enforce the terms of the Gift is to contravene the well-settled principle that a donor's expressed intent is entitled to protection and the longstanding recognition under New York law of standing for a donor such as Smithers.... Mrs. Smithers, appointed the Special Administratrix of Smithers's estate for the purpose of pursuing claims by the estate against the Hospital in connection with its administration of the [Treatment] Center, therefore has standing to sue the Hospital for enforcement of the Gift terms.

*Id.* at 138, 139, 140-41. Thus, standing was found to exist in *Smithers* because the plaintiff's status as administratrix of the donor's estate placed her in the donor's shoes, and correspondingly granted her the donor's powers of enforcement. *See* VICTORIA B. BJORKLUND, JAMES J. FISHMAN AND DANIEL L. KURTZ, NEW YORK NONPROFIT LAW AND PRACTICE: WITH TAX ANALYSIS § 11.05[1][a] (2d ed. 2007).

In stark contrast to *Smithers*, Rettek is not alleged to be the legal representative of the Belangers' estates, or even the Belangers' heir. Rather, it appears her only connection to the Belanger Legacy stems from her status as the Belangers' niece. However, no New York case has been brought to the court's attention in which a donor's family member has been

10

permitted to enforce conditions on a charitable gift based solely on the familial relationship. Indeed, faced with similar factual circumstances both the Second and Fourth Departments have found standing to be lacking in cases decided after *Smithers*. *See Bd. of Educ. of Mamaroneck Union Free Sch. Dist. v. Attorney Gen. of N.Y.*, 25 A.D.2d 637 (2d Dep't 2006) (holding that a donor's grandson, as the representative of his grandfather's estate, lacked a "special interest" sufficient to enforce restrictive covenants in deeds gifted by his grandfather)*; In re Alaimo*, 288 A.D.2d 916 (4th Dep't 2001) (holding "decedent's grandson and a person in whose honor the trust was created, lacks standing to challenge petitioners' administration of the trust"). Accordingly, the clear weight of New York's common law bars Rettek from bringing this action.[2]

**B.     Standing under Not-for-Profit Corporation Law § 522**

The court also rejects Rettek's arguments insofar as she contends that N-PCL § 522 confers standing to bring this action.

N-PCL § 522 was enacted as part of New York's adoption of the Uniform Management of Institutional Funds Act (the "UMIFA"), and states,

---

[2]The court additionally finds Rettek's assertion that there is a "modern trend" around the country to extend standing to donors and their collateral relatives unpersuasive. Again, Rettek is not a donor and - despite what courts around the country might be doing - this court has discerned no trend in New York to extend standing to collateral relatives.

11

in relevant part:

> (a) With the consent of the donor in a writing acknowledged by him, the [donee] may release, in whole or part, a restriction imposed by the applicable gift instrument on the use or investment of an institutional fund.
>
> (b) If written consent of the donor cannot be obtained by reason of his death, disability, unavailability, or impossibility of identification, the [donee] may apply ... to the [supreme or surrogate's court] for release of a restriction imposed by the applicable gift instrument....

N-PCL § 522.  Clearly, this provision allows a donor to prevent deviation from gift restrictions by withholding consent to such deviation.  However, § 522 contains no provision which grants a deceased donor's relatives standing to enforce gift restrictions.  Indeed, the commentary to § 7 of the UMIFA goes so far as to recognize that donor's themselves have no power to affirmatively enforce gift restrictions.  "The donor has no right to enforce the restriction, no interest in the fund and no power to change the eleemosynary beneficiary of the fund.  He may only acquiesce in a lessening of a restriction already in effect."  UMIFA, § 7, comment, 7A U.L.A. 504.  *See also Carl J. Herzog Found. v. Univ. of Bridgeport*, 243 A.2d 995, 999-1002 (Conn. 1997) (rejecting assertion that donor standing exists under § 7 of the UMIFA).  Thus, although § 522 may require donor

12

consent for release of a gift restriction, it is the Attorney General, not the donor or his estate, which may enforce violations of the section.

## V. Conclusion

While Rettek's attempt to enforce the wishes of her late aunt and uncle is admirable, and her frustration is understandable, the court finds that she lacks a legal interest sufficient to enable her to challenge Ellis' use of the Belanger Legacy.  To allow standing based solely on familial relations would undoubtably subject charitable entities to a multitude of potentially vexatious lawsuits.  While New York's courts may eventually find that such risks are outweighed by the benefits of expanded standing, it is not the role of a federal court to push state law down that slope.  In the meantime donors can ensure their wishes are honored by expressly providing for enforcement by family members or forfeiture if their restrictions are not satisfied.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions to dismiss (Dkt. Nos. 5 & 6.) are **GRANTED** and the complaint is **DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that the Clerk of the Court enter judgment and close this

case; and it is further

      **ORDERED** that the Clerk of the Court provide a copy of this Order to the parties by regular mail.

**IT IS SO ORDERED.**

Dated: January 12, 2009
Albany, New York

                                              Gary L. Sharpe
                                              U.S. District Judge